IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ALO NEW YORK LLC,** | Civil Action No.: 2:23-cv-08098 |
| **Plaintiff,** | |
| v. | |
| **BAYARD DESIGN, LLC,** | |
| **Defendant.** | |

## COMPLAINT

**COMES NOW** plaintiff, ALO New York LLC, by its counsel, who brings a complaint against defendant, Bayard Design LLC, and alleges and says:

### Preliminary Statement

1. ALO New York LLC ("Plaintiff ALO") files a complaint concerning the rights, obligations, and liabilities of the defendant Bayard Design LLC with respect to damages that have arisen as a result of the poor and defective design and services provided and subsequent failures of certain uniquely designed hand dispensers (the "Dispensers").

### Jurisdiction

2. Jurisdiction over the claims contained herein is invoked pursuant to 28 U.S.C. §§ 1332(a)(1) and (c) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00.

### Venue

3. This action properly lies in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district.

**Parties**

4. Plaintiff ALO is and, at all relevant times mentioned herein, is a limited liability company duly organized and existing under the laws of the State of New York that has been authorized to engage in business in New York.

5. Plaintiff ALO identified a market opportunity in the rise of government orders and business initiatives to provide hand sanitizer to customers and workers during the COVID-19 pandemic. The standard practice was either to place a bottle of sanitizer on any available surface, such as a table or counter space, or to insert sanitizer into low-end white plastic stands that aged quickly in high-traffic environments. Plaintiff ALO's product would provide a higher-end look and experience and maintain that look over its entire lifetime.

6. Defendant Bayard Design LLC ("Defendant Bayard") is and, at all times mentioned herein, is a limited liability company with its principal place of business in Cambridge, Middlesex County, Massachusetts. At all times pertinent hereto, Defendant Bayard was engaged in the sale of products and services in New York and specifically was engaged in the design and sale of products including the Dispensers.

7. According to the Defendant Bayard, it provides engineered solutions to its customers' product design projects. Products designed by Defendant Bayard have yielded tens of millions of dollars in revenue for its partners. Defendant Bayard's team can run a customer's project from concept to design to launch to maintenance to redesign. Defendant Bayard brings the latest best practices and techniques to bear on its customer's products.

## Factual Background

### Project Background and Initiation

8. In March 2020, the onset of the pandemic heightened cleanliness concerns across numerous industries. Businesses, educational institutions, and residential complexes deployed hand sanitizing devices, but these were largely of subpar quality, often characterized by unimpressive aesthetics, subpar design, and sanitizing solutions that were frequently sticky and emitted unpleasant odors.

9. In July 2020, recognizing a market demand for high-end sanitization machines, Plaintiff ALO initiated discussions with Defendant Bayard regarding the design and development of a luxury sanitizer Dispensers.

10. On July 23, 2020, Plaintiff ALO and Defendant Bayard entered into a contract on November 5, 2020 (the "Contract"), which outlined that design and production readiness, including pilot run approval, would require ten to twenty-five weeks, contingent on vendor timelines. A true and correct copy of the Contract is attached and made a part hereof as Exhibit A.

11. In September 2020, Defendant Bayard sent Plaintiff ALO a deck, which included a product insight slide. This slide depicted product insights from other dispensers on the market that Defendant Bayard used when developing Plaintiff ALO's Dispensers.

12. A key aspect of these reference devices was that their designs isolated the electronic components from the sanitizing fluid. However, Defendant Bayard's design for Plaintiff's product (which was, of course, not ready at the time of the presentation of this deck) would ultimately fail to implement this crucial design principle, resulting in a product that constantly failed.

13. While this improper design was the most problematic part of Defendant's work for Plaintiff, the entire process of working with Defendant Bayard was also marred by general incompetence and poor execution, creating an accumulation of excess costs, lost time, and failed obligations to clients for Plaintiff and ultimately ending with the total absence of a viable product.

14. Over the course of the project, Defendant Bayard used a number of vendors with whom it presumably had extant relationships. Issues with these vendors contributed to the delays and difficulties with the project.

15. Defendant Bayard used the following vendors: Jet Fabricators, Inc. ("Jet") for metal manufacture and assembly; SuNPe Inc. ("SuNPe") for molded plastics manufacture; NEOTech ("NEOTech") for electronic boards manufacture; New England Die Cutting ("NEDC") for supply of tape; Winco; DNK Power ("DNK") for manufacture of batteries ; and Alkaline Fluid for manufacture of the hand sanitizer solution itself. In addition, Dimar Manufacturing Corporation ("Dimar") replaced Jet for metal fabrication after Jet failed to deliver.

**Defendant's Pattern of Incompetence throughout the Project**

16. Around October 27, 2020, SuNPe revised the nozzle to align with specifications provided by Defendant Bayard's founder, Matthew De Remer, as the original nozzle was incompatible with the pump motor.

17. On or around December 10, 2020, Defendant Bayard recommended that Plaintiff ALO reduce the sanitizer container size from 1,000 ml to 900 ml due to interference with the lighting design. Plaintiff ALO reluctantly accepted this change, despite other sanitizer competitors in the market offering 1,000 ml containers.

18. On February 8, 2021, Defendant Bayard's demonstration dispenser failed; only one unit out of five, initially scheduled for delivery on November 20, 2020, arrived. The malfunction resulted in significant costs amounting to $5,050.00.

19. On February 14, 2021, adjustments were made to the demo units to attempt to correct these failures, specifically adjusting LED lights and improving battery performance.

20. On or about February 17, 2021, SuNPe redesigned the drip tray cover due to issues with fluid dispersion into the drip tray.

21. On or around February 18, 2021, Plaintiff determined that there was a possibility that the Dispensers were failing due to a connector piece produced by NEOTech. Defendant Bayard's suggested solution was to tape this piece because hypothetically, the piece coming loose was causing the devices to fail. However, this solution did not correct the issue.

22. On or about February 23, 2021, Jet was unable to produce a sample meeting Defendant's and Plaintiff's standards. Following disputes, Jet agreed to refund $27,101.25 of the initial deposit of $42,435 but has yet to complete paying this sum back and still owes $3,567.50. Jet was not competent to fulfill the needs of this project, a fact with which Defendant Bayard later agreed. This caused a significant delay in readiness of the Dispensers.

23. On approximately March 17, 2021, adjustments costing $5,134 were made to the SuNPe bottle holder tool. This was due to a Defendant Bayard design flaw.

24. On or about May 17, 2021, a diffusing agent, costing $1,376, was added to SuNPe's parts because the LED design was not functioning as planned. This still did not solve the problem.

25. Around July 6, 2021, an additional $2,459 was expended to adjust the diffusing ring mold by Vendor SuNPe. This was due to original design not functioning and was a

proposed solution.  This improved performance, but it still did not function as originally outlined.

26. On July 20, 2021, LED lights were modified to address battery issues, resulting in reduced brightness and elimination of color options with the default setting (which should have featured flashing lights during dispensing).

27. On or about August 20, 2021, due to design flaws, the LEDs were lowered to prevent interference with the bottle, incurring a cost of $2,096.

28. On October 11, 2021, Defendant Bayard informed Plaintiff ALO that the custom sanitizer bottle needed reworking due to nozzle incompatibility with various manufacturers, costing $2,000. The initial mold creation incurred a cost of $10,175.

29. Around November 10, 2021, adjustments to plastic parts for the Dispensers were necessary due to sink-related changes, leading to a tool adjustment cost of $3,174. This subsequently resulted in several mold adjustments with SuNPe, including the bottle holder, the upper internal left piece, the upper internal right piece, and the window, bringing the mold cost to $158,210.

30. On or about December 2, 2021, NEDC billed Plaintiff ALO $5,624 for multiple tape replacements following failures. The lower back mouthpiece detachment affected several customer dispensers.  This issue was never resolved.

31. On December 8, 2021, Defendant Bayard revised instructions at an additional cost of $2,500, as the initial instructions were deemed user-unfriendly.

32. In December 2021, NEOTech repeatedly reworked circuit boards due to a continuous red or green flashing light indicating the device was not functional. Out-of-stock

parts caused continuous additional labor to redesign the logic board, and battery life issues were an ongoing issue, incurring a total of $106,927.

33. On January 1, 2022, Defendant Bayard and Winco introduced a key to power the Dispensers on and off to address mouthpiece defects. However, this caused the Dispensers to unexpectedly spray sanitizer on customers' hands and arms when accessing the internal part of the Dispensers. This design change incurred an additional expense of $1,743.

34. On March 24, 2022, DNK Power charged Plaintiff ALO an additional $6,800 for battery drawings, excluding prototype costs. An additional $3,415 was spent to redesign wattage to meet shipping requirements, totaling $10,215.

35. On April 26, 2022, Defendant Bayard and Alkaline Fluid reformulated the hand sanitizer fluid four times to prevent clogging and battery drainage, resulting in expenses of $2,700 and the loss of an initial batch made with another company at a cost of $8,119.00. Defendant Bayard had recommended a specific viscosity value for the sanitizer fluid, but when production kept failing when using the fluid made to the viscosity Defendant Bayard recommended, Defendant Bayard communicated that this was not in fact the right viscosity.

36. In September 2022, the first twelve dispensers sold experienced failures with subsequent dispensers meeting the same fate. Plaintiff ALO incurred costs of $6,800.

37. Additionally, due to a cap design flaw, the cap underwent a redesign to prevent over-spinning.  These failures were not only embarrassing, but they also caused significant delays in production and lost customers.

38. By October 19, 2022, approximately 90% of Plaintiff ALO's customers reported issues with the Dispensers continuously dispensing and requiring disconnection from the power source to discontinue the malfunction. Plaintiff ALO conducted numerous on-site visits to

address customer concerns. However, a solution could not be found with Defendant Bayard's design, ultimately resulting in customer refunds.

39. In November 2022, Brooklyn Dumpling Shop committed to purchasing 600 Dispensers and fluid refills. Plaintiff ALO, unable to fulfill this order with functional s, incurred a loss of $330,000 for Dispensers and a loss of $89,400 for sanitizer fluid refills.

40. On January 27, 2023, Defendant Bayard identified a design flaw where fluid contact with the circuit board during dispenser use led to board failures. Defendant Bayard requested $4,100 for the application of a protective coating to 500 boards, addressing the fluid issue resulting from their design.

41. As previously noted, Defendant Bayard's initial product insights from September 2020 showed a separation between the electronics and the sanitizer fluid in comparable products in the sanitizer market. However, when developing Plaintiff ALO's Dispensers, Defendant Bayard's design featured no such compartmentalization, leading to fluid leakage into the motor and dispenser failures.  Separating liquid from electronics in products where both are present is a basic design principle.

42. On July 27, 2023, Dimar recommended discarding Plaintiff ALO's 15,378 pounds of raw steel and 11,164 pounds of processed steel due to rusting after twenty months. Even if the rust issues were remedied, the steel's finish would have remained unacceptable to customers. This resulted in a loss of $97,481.23 to Plaintiff ALŌ.

43. In September 2023, having received no functional Dispensers, Plaintiff ALO initiated mediation proceedings with Defendant Bayard. Mediation failed.

44. To date, Defendant has not delivered functional and operational Dispensers to the Plaintiff ALO.

45. To date, Plaintiff ALO has paid Defendant Bayard approximately $257,920.62 under the Contract, expended approximately $599,208.00 on third party vendors and suppliers, and suffered approximately $711,104.00 in lost profit.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

46. Plaintiff ALO adopts and incorporates by reference paragraphs 1 through 43 as if fully set out here.

47. Plaintiff ALO and Defendant Bayard entered in the Contract, which outlined the design and production of a luxury sanitizer Dispensers, including specific terms and obligations.

48. Plaintiff ALO fully performed its contractual obligations by complying with the terms of the Contract and making required payments to Defendant Bayard, totaling approximately $540,408.

49. Defendant Bayard failed to materially perform its obligations under the Contract.

50. Defendant Bayard failed to deliver operational and functional Dispensers within the agreed-upon timeframe, resulting in substantial delays and additional costs for Plaintiff ALO.

51. Defendant Bayard provided defective Dispensers that continuously dispensed sanitizer, rendering them unusable and leading to customer complaints, refunds, and lost business opportunities.

52. Defendant Bayard failed to address design flaws in the Dispensers, including issues with fluid leakage onto the circuit boards. Defendant Bayard designed the product without adequate separation between the motor and sanitizer, which was a known industry standard.

53. Defendant Bayard recommended and implemented various adjustments and modifications to the Dispensers' components, such as nozzles, bottle sizes, LED lights, and

circuit boards, without adequately addressing functionality and quality concerns.

54. Defendant Bayard's avoidable delays resulted in the rusting of significant quantities of raw and processed steel, rendering these materials unsuitable for use in the dispenser manufacturing process.

55. Plaintiff ALO has incurred substantial financial losses and damages as a direct result of Defendant Bayard's breach of contract, including but not limited to costs associated with manufacturing adjustments, redesigns, and replacements necessitated by Defendant Bayard's failures, totaling a significant sum, including expenses related to vendors and materials; lost revenue from customer refunds and the inability to fulfill substantial orders, and customer dissatisfaction and harm to Plaintiff ALO's reputation due to the defective Dispensers, leading to a decline in business.

56. Plaintiff ALO has been damaged by the breaches of Defendant Bayard in amount of approximately $1,568,232.62 in compensatory and/or restitution damages plus consequential and incidental damages.

**SECOND CAUSE OF ACTION**
**(Implied Warranty of Merchantability)**

57. Plaintiff ALO adopts and incorporates by reference paragraphs 1 through 56 as if fully set out here.

58. Defendant Bayard, acting as a merchant, breached the implied warranty of merchantability by delivering defective and non-functional sanitizer Dispensers that were not fit for their intended purpose nor in a workmanlike matter.

59. Defendant Bayard impliedly and expressly warranted that it had knowledge and was capable of designing, assembling, and/or supplying sanitizer Dispensers

60. Under New York state law, there exists an implied warranty of merchantability,

which is an unspoken, automatic promise made by merchants that the goods they design and assemble will perform their intended function without significant defects.

61. Defendant Bayard supplied Dispensers that ceaselessly dispensed sanitizer, physically fell apart on customers, or stopped dispensing altogether, rendering them nonfunctional and unusable for their intended purpose.

62. Defendant Bayard designed the Dispensers without adhering to industry standards, specifically by failing to provide adequate separation between the motor and sanitizer, which caused fluid leakage onto the circuit boards. Defendant Bayard failed to address design flaws and functionality issues despite having been aware of them, (see paragraph 9) resulting in a product that did not meet the basic expectations of merchantability.

63. The Defendant Bayard acknowledged issues but has still not provided Plaintiff ALO with a singular working dispenser.

64. Plaintiff ALO suffered substantial damages as a result of Defendant Bayard's breach of the implied warranty of merchantability, including but not limited to costs associated with the Contract, adjustments, modifications, and redesigns of the Dispensers' components due to Defendant Bayard's failures, resulting in significant expenses related to vendors and materials; lost revenue stemming from customer dissatisfaction, complaints, and the inability to fulfill substantial orders; and harm toe Plaintiff ALO's reputation as a result of distributing defective products, leading to a decline in business and customer trust.

65. Defendant Bayard breached its implied warranty of merchantability as the Dispensers was not of merchantable quality and, as a result of Defendant Bayard's breach of the implied warranty of merchantability, Plaintiff sustained direct damages plus consequential damages as set forth above.

## THIRD CAUSE OF ACTION
### (Implied Warranty of Fitness Pursuant to NY UCC § 2-315)

66. Plaintiff ALO adopts and incorporates by reference paragraphs 1 through 65 as if fully set out here.

67. Defendant Bayard, as the seller and designer of goods, impliedly warranted that the goods provided would be fit for the particular purpose for which they were intended, as Plaintiff ALO relied on Defendant Bayard's skill and judgment.

68. At the time of the Contract, Defendant Bayard, the seller, had reason to know that Plaintiff ALO intended to use the goods, namely the Dispensers, for a specific purpose, namely, to provide functional and reliable sanitizer dispensing units to customers.

69. Plaintiff ALO, the buyer, reasonably relied on Defendant Bayard's skill, expertise, and judgment to select and furnish suitable goods that would serve the intended purpose effectively and without defects.

70. Defendant Bayard failed to deliver operational and functional Dispensers within the agreed-upon timeframe, thereby causing substantial delays in deploying the Dispensers for their intended use.

71. Defendant Bayard supplied defective Dispensers that were unsuitable for their intended purpose and caused customer dissatisfaction.

72. Defendant Bayard did not properly address design flaws in the Dispensers, including issues with fluid leakage onto the circuit boards, despite industry standards and knowledge.

73. Plaintiff ALO has expended over $540,408 and has still not received a single working dispenser from Defendant Bayard.

74. Plaintiff ALO has suffered significant financial damages due to Defendant

Bayard's breach of the implied warranty, including costs incurred to rectify and replace defective Dispensers, including expenses associated with vendor adjustments, redesigns, and refunds; diminution in the value of the brand and customer faith; and time and expense in prosecuting this action after a failed mediation.

75. Defendant Bayard breached its implied warranty of fitness for a particular purpose as the Dispensers was not fit for its particular purpose and, as a result of Defendant Bayard's breach of the implied warranty of fitness for a particular purpose, Plaintiff suffered direct and consequential damages as set for above.

### FOURTH CAUSE OF ACTION
### (Breach of Express Warranty)

76. Plaintiff ALO adopts and incorporates by reference paragraphs 1 through 75 as if fully set out here.

77. Defendant Bayard expressly warranted that it had knowledge and was capable of designing and/or assembling the Dispensers.

78. Defendant Bayard expressly warranted that the design and assembly it provided would function as intended for its specific use and purpose.

79. Defendant Bayard breached its express warranty, causing Plaintiff to incur direct compensatory and consequential damages as set forth above.

### FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

80. Plaintiff ALO adopts and incorporates by reference paragraphs 1 through 79 as if fully set out here.

81. Plaintiff ALO made payments to Defendant Bayard, totaling approximately $257,920.62.

82.     Defendant Bayard was the beneficiary of said payments, which came at the expense of Plaintiff ALO.

83.     It is against equity and good conscience to allow Defendant Bayard to retain the value of said payments for multiple reasons.

84.     Defendant Bayard failed to deliver operational and functional Dispensers within the agreed-upon timeframe, resulting in substantial delays and additional costs for Plaintiff ALO.

85.      Defendant Bayard provided defective Dispensers that continuously dispensed sanitizer, rendering them unusable and leading to customer complaints, refunds, and lost business opportunities.

86.     Defendant Bayard failed to address design flaws in the Dispensers, including issues with fluid leakage onto the circuit boards. Defendant Bayard designed the product without adequate separation between the motor and sanitizer, which was a known industry standard.

87.     Defendant Bayard recommended and implemented various adjustments and modifications to the Dispensers' components, such as nozzles, bottle sizes, LED lights, and circuit boards, without adequately addressing functionality and quality concerns.

88.     Defendant Bayard's avoidable delays resulted in the rusting of significant quantities of raw and processed steel, rendering these materials unsuitable for use in the dispenser manufacturing process.

89.     Plaintiff ALO has incurred substantial financial losses as a direct result of Defendant Bayard's unjust enrichment in the amount of $257,920.62.

## Relief Demanded

**WHEREFORE**, Plaintiff ALO New York respectfully prays the Court as follows:

a.     That the Court award damages in the amount of $1,568,232.62 attributable to

Defendant Bayard's breach of contract;

b.  That the Court award damages in the amount $1,568,232.62 attributable to Defendant Bayard's breach of the implied warranty of habitability;

c.  That the Court award damages in the amount of $1,568,232.62 attributable to Defendant Bayard's breach of the implied warranty of fitness for a particular purpose;

d.  That the Court award damages in the amount of $1,568,232.62 attributable to Defendant Bayard's breach of its express warranty;

e.  That the Court award damages in the amount of $257,920.62 for unjust enrichment; and

f.  For such other and further relief as the Court may deem just and proper.

Dated: October 30, 2023
       Great Neck NY

**RICHARD M. HENDLER, ESQ.**

*/s/ Richard Hendler*
**By:** _____
       Richard M. Hendler, Esq.

Mailing Address:
10 Bond Street, Suite Box 218
Great Neck, NY 11021
(516) 984.6900
hendler@hendlerlawfirm.com

*Attorney for Plaintiff ALO New York LLC*